IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICHOLAS DUTTLE, SHARON DUTTLE,
and SHAUN DUTTLE,

      Plaintiffs,

v.                                    Civ. No. 10-839 MCA/GBW

CURTIS CHILDRESS, et al.,

      Defendants.

## <u>ORDER</u>

THIS MATTER is before the Court on Defendants Dona Ana County, Dona Ana County Sheriff's Department, Robin Gojkovich, Carlos Madrid, Henry Rodriguez, Joe Herrera, Joe Padilla, John Martinez, Mary Lou Ward, Robbie Acosta, Susie Maldonado, Travis Wells, Valerie Heredia, and Michelle Boudrie's ("County Defendants") Motion for Sanctions Against Plaintiffs for Failure to Pay Court-Ordered Sanctions ("Defendants' Motion"). *Doc. 79*. Defendant Curtis Childress joined in the Motion in a subsequent filing. *See doc. 82*. Defendants' Motion will be granted in part. Plaintiffs will be ordered to abide by a Court-established payment plan. The Court will, however, reduce the original total due from Plaintiffs and will assess sanctions to Plaintiffs' counsel in the amount reduced from Plaintiffs' burden.

### *Background*

On September 10, 2010, Plaintiffs Nicholas, Sharon, and Shaun Duttle ("Plaintiffs") filed suit in this Court alleging various Constitutional and statutory entitlements to relief.[1]  *See generally doc. 1.*  Plaintiffs' suit was premised upon the allegedly unlawful search of Sharon Duttle's property and seizure of various items of property belonging to each plaintiff.  *See generally id.*  Although Plaintiffs initially appeared *pro se*, (*see id.* at 6-7), Plaintiffs eventually retained Augustine Rodriguez, Jr. ("Plaintiffs' counsel" or "Mr. Rodriguez") as counsel, (*doc. 8*).

In an Order issued May 23, 2011, the Court set forth various deadlines in accordance with Federal Rule of Civil Procedure 16.  *See doc. 28*.  Therein, the Court set "[t]he termination date for discovery [a]s November 15, 2011 . . . ."  *Id.* at 1.  It further explained that the November 15, 2011 date would "be construed to require that discovery be completed on or before" that date.  *Id.*  As such, any "notice to take deposition [was to] be considered timely only if the deposition [would take] place prior to the deadline."  *Id.* at 1-2.

"During the discovery period . . . , the Defendants sought available dates for the depositions of Plaintiffs via their counsel over a period of five weeks with no success."

---

[1] In light of the common last name among all three Plaintiffs, for clarity the Court refers to each Plaintiff by their first and last names when discussing them individually.

*Doc. 56* at 2.[2]  Receiving no proposed deposition dates from Plaintiffs, Defendants scheduled Plaintiffs' depositions in Las Cruces[3] for November 14 and 15, 2011.  *Id.* "Notices for the depositions were sent to Plaintiffs' counsel on October 26, 2011."  *Id.*

Defendants' counsel traveled from Albuquerque to Las Cruces in anticipation of taking the depositions as noticed.  *See docs. 64, 66.*  Despite receiving proper notice, none of the Plaintiffs appeared for their deposition.  *Doc. 56* at 2.  Although Plaintiffs' counsel was explicitly told by his clients several days before the scheduled depositions that they would not appear, he did not advise Defendants' counsel of this fact.  *See doc. 87* at 19 (asking counsel about his failure to contact opposing counsel despite knowing clients would not appear).

Following the non-appearance at the depositions, Defendants filed a motion seeking sanctions in the form of a dismissal and/or financial sanctions.  *See doc. 56* at 3-7. In response Plaintiffs offered the following excuses for their absences:

> Each of the Plaintiffs [sic] situations are different, Shaun Duttle is currently enrolled at NMSU and holds a 4.0 average in his course work and had a very difficult time in scheduling a deposition, and/or attending without jeopardizing his GPA.  Nicholas Duttle on the other hand has been rock climbing in Kentucky and would have needed to conduct his deposition by telephone.  Sharon Duttle is just plain emotional [sic] devastated as a result of the raid on her property and has a very difficult time dealing with the requirements of her case.

---

[2] The initial portion of the instant background section is taken nearly verbatim from the Court's previous order issuing sanctions.  *See doc. 62* at 1-2.  Plaintiffs did not then and have not now disputed the version of events offered by Defendants.

[3] The Court notes that, despite Defendants' counsel residing and working in Albuquerque, they noticed Plaintiffs' depositions to occur nearest to Plaintiffs' residence.

*Doc. 59* at 2-3.  Regarding the possible alternative, lesser option of a monetary sanction, Plaintiffs presented the one-sentence, unsupported assertion that "lesser sanctions such as costs and attorneys [sic] fees . . . would also prejudice the Plaintiffs more, as the Plaintiffs are of limited income and since their inability to pay would be a defacto [sic] dismissal of their case."  *Id.* at 4.  The Court rejected these excuses, denied Defendants' request for a dismissal, and ordered Defendants to submit affidavits regarding fees expended in order to sanction Plaintiffs.  *See generally doc. 62.*

Defendants filed the requisite affidavits on January 31, 2012.  *See docs. 64, 66.* Plaintiffs objected to the affidavits on the basis that the affidavits did not provide "time records reflecting how the . . . attorneys' fees was[sic] billed . . . ."  *Doc. 67* at 2.  In response, Defendants filed amended affidavits to meet Plaintiffs' objections.  *See generally doc. 69.*  Given these amendments, the Court ordered Plaintiffs to notify the Court if any continued objections existed and explained that "[f]ailure to file any objections w[ould] be deemed acceptance of the claims for fees as so modified."  *Doc. 72.* Plaintiffs filed no additional objections and, on February 28, 2012, the Court entered an Order directing payment of $3,371.75 to County Defendants' counsel's firm and $1,876.75 to Mr. Childress's counsel's firm.  *Doc. 76.*  Plaintiffs were expressly ordered to pay those sanctions within thirty days.  *Id.*

On April 10, 2012, having not received any payment from Plaintiffs, County Defendants filed a second motion for sanctions for failure to comply with the sanction

order.  *See generally doc. 79.*  Mr. Childress joined the motion in its entirety.  *Doc. 82.*  In

response to the motion, Plaintiffs asked the Court to deny dismissal and to either (1) not

further enforce the sanctions order but simply require Defendants to obtain an order of

judgment on the basis of the order, or (2) allow Plaintiffs to pay the sanctions over time

pursuant to a payment plan.  *See doc. 83* at 3.  The Court ordered a hearing on the motion

and specifically directed Plaintiffs to be prepared to propose a payment plan at the

hearing.  *Doc. 84.*

At the hearing the Court asked Plaintiffs' counsel to inform the Court of a

suggested payment plan.  *Doc. 87* at 3.  Despite having explicitly suggested that

"allowing a payment plan would be another option that this Honorable Court can

impose," Plaintiffs' counsel responded that Plaintiffs could not comply with any

payment plan whatsoever.  *Id.* at 3-4.  Instead, counsel proposed only that Defendants

seek an order of judgment.  *Id.* at 4.

The Court then inquired further into the present employment statuses of

Plaintiffs.  *Id.* at 5.  Plaintiffs indicated that Sharon Duttle "was doing tattoos . . . and

house cleaning and stuff like that," but is now unemployed.  *Id.* at 5.  Plaintiffs' counsel

explained that Shaun Duttle is currently an unemployed student and is financing his

education via scholarships and grants.  *Id.* at 10.  Further, Plaintiffs proffered that

Nicholas Duttle is a rock climber and that he receives sponsorships to climb that cover

the costs of trips but leave him with no further cash.  *Id.* at 9.  Plaintiffs further asserted

that they are receiving no government assistance at this time.  *Id.* at 7.

During the course of the discussions with Plaintiffs' counsel, Sharon Duttle

interjected that, in fact, Plaintiffs "had informed [Plaintiffs' counsel] that [they] were not

going to be attending via Email, text and phone . . . ."  *Id.* at 12.  In light of that assertion,

the Court asked Plaintiffs' counsel why "given that Mrs. Duttle says, that it's your fault

for not calling, why shouldn't I just grant some – at least some of the sanctions against

you personally under 1927."[4]  *Id.* at 13.  Mr. Rodriguez responded that he had attempted

to communicate with his clients and referenced his filing of a Motion to Stay on the

Saturday before the scheduled depositions.  *See id.*  At that point, the Court placed each

Plaintiff under oath and requested their sworn statements regarding what

communications, if any, they had with Mr. Rodriguez prior to failing to appear for the

deposition.  *Id.* at 14-18.

Sharon Duttle stated that, "between five and seven days" before Plaintiffs failed

to appear for their depositions, she told Mr. Rodriguez that Plaintiffs did not intend to

appear at the deposition.  *Id.* at 14.  She continued by explaining that Mr. Rodriguez had

then repeatedly contacted her and that "he kept pushing and pushing for [Plaintiffs] to

show up for these depositions when he'd been told we weren't going to be there."  *Id.* at

15.  Nicholas and Shaun Duttle likewise testified as to knowledge of that same

---

[4] The Court was referring to 28 U.S.C. § 1927; the statute's application to this case is discussed *infra*.

interaction between Sharon Duttle and Mr. Rodriguez. *See id.* at 15-18. Nicholas Duttle also testified that he had independently "made [it] very clear" to Mr. Rodriguez that he would not be attending the deposition. *See id.* at 17.

The Court then returned to questioning Mr. Rodriguez. The Court asked Mr. Rodriguez why, given that "at some point in the days before the deposition . . . [he] should have known that [Plaintiffs] were going to refuse to appear," Mr. Rodriguez did not inform Defendants in advance of Plaintiffs' intentions. *Id.* at 19. In response, Mr. Rodriguez recounted his attempts to communicate with Plaintiffs – essentially agreeing with Plaintiffs regarding the events preceding the depositions. *See id.* at 19-21. The Court again asked Mr. Rodriguez why, knowing what he knew, he did not contact Defendants in advance. *Id.* at 21-22. Mr. Rodriguez eventually responded that he "was hoping that once [parties were at the deposition site, Sharon Duttle] would show up." *Id.* at 22.

## *Analysis*

I.   *Counsel's Sanctions*

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally all the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Court need not find a malicious intent for conduct to be sanctionable, it need only find that the attorney's act or omission was intentional. *See Braley v. Campbell*,

832 F.2d 1504, 1511 (10th Cir. 1987) (citing *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223,

227 (7th Cir. 1984)).  An attorney facing sanctions under section 1927 is entitled to notice

and the opportunity to be heard.  *See Hamilton v. Boise Cascade Express*, 519 F.3d 1197,

1204 (10th Cir. 2008) (discussing a court's obligations when sanctioning attorney).

      At the hearing, Mr. Rodriguez seemed to assert two reasons why he should not

be sanctioned personally.  First, he referred to his repeated attempts to contact his

clients prior to the date of the deposition.  *See doc. 87* at 19-21.  As the Court noted in the

hearing, however, "at some point in the days before the deposition . . . [Mr. Rodriguez]

should have known that [Plaintiffs] were going to refuse to appear." *Id.* at 19.  At that

point, even if it came a day before the scheduled depositions, Mr. Rodriguez had an

obligation to inform Defendants' counsel of Plaintiffs' refusal to attend.

      Mr. Rodriguez next seemed to contend that his filing of a motion to stay was

sufficient to address his knowledge that his clients did not intend to appear for their

depositions.  *See, e.g., id.* at 21.  Specifically, during the hearing, the Court asked Mr.

Rodriguez why it should not sanction him under section 1927 to which Mr. Rodriguez

replied, *inter alia*, "I filed an order – a motion to try to postpone on the Saturday before

[the depositions.]" *Id.* at 13.  Later in the hearing, Mr. Rodriguez repeated that he had

filed a motion to stay.  *Id.* at 21.  This argument is unavailing as well.

Mr. Rodriguez filed the motion to stay proceedings on Saturday afternoon[5] when the depositions were scheduled to begin on Monday morning. *See doc. 50.* The one-paragraph motion offered as basis only that Sharon Duttle's ongoing criminal proceedings might impact the present case. *See id.* No mention was made of their refusal to attend their depositions and, in fact, the motion referred to those impending depositions without so much as intimating a problem. *See id.* ("[T]he only matters pending are the Plaintiffs [sic] depositions that were scheduled for November 14 and 15, 2011."). Moreover, the motion failed to comply with the local rule requiring a recitation informing the Court of the opposing party's position. The motion was summarily denied the first business day after its filing on the basis of this violation. *Doc. 52.* Thus, rather than excusing Mr. Rodriguez' failure to contact opposing counsel, the Motion to Stay actually compounds it. Had Mr. Rodriguez been forthright in the motion and sought concurrence as required, Defendants would have been made aware of his clients' lack of intent to attend their depositions.

After the hearing, the Court offered Mr. Rodriguez the opportunity to submit additional briefing on whether he should be sanctioned. *See doc. 89.* Mr. Rodriguez responded by reasserting his stance on whether his clients should be sanctioned further for failure to pay – an issue clearly not the subject of the Court's order for the additional briefing – and described his interactions with his clients over the preceding months. *See*

---

[5] The motion was filed at 3:09 p.m. on Saturday. *Doc. 50* (notice of electronic filing).

*generally doc. 90.* At no point in Mr. Rodriguez's briefing does he contend that he believed his clients were likely to appear for their depositions. Moreover, Mr. Rodriguez's brief does not offer any justification for failing to take the simple step of advising opposing counsel that his clients were refusing to appear. If anything, the recitation of difficulties with his clients serves to further underscore his advance knowledge that his clients would not appear for depositions and, thus, supports sanctioning him individually.

It is abundantly clear to the Court that, no matter Mr. Rodriguez's actions, Plaintiffs would not have appeared for their depositions. It is also indisputable that the "excuses" of each Plaintiff for not appearing are not now, and were not then, acceptable excuses for failing to be deposed in a lawsuit they themselves initiated. Thus, sanctions would no doubt have been issued as to Plaintiffs. Mr. Rodriguez's conduct, however, led to an additional injury on top of general improper conduct by transforming poor decision making by Plaintiffs and a lack of communication into a wasteful series of expenses by opposing counsel. Had Mr. Rodriguez simply picked up the phone and notified Defendants of his clients' refusal to attend, significant expense would have been spared. Mr. Rodriguez, however, failed to take that simple step to mitigate the damage. As such, the Court finds that Mr. Rodriguez's conduct has independently "multiplie[d] the proceedings . . . unreasonably." *See* 28 U.S.C. § 1927; *see e.g. Harrington v. Disney Reg'l Entm't, Inc.*, 276 Fed. App'x 863, 877 (11th Cir. 2007) (section 1927

sanctions appropriate where counsel failed to notify opposing counsel that he would be unable to attend noticed deposition).  Thus, while the Court will lower Plaintiffs' sanctions in light of their financial circumstances, the Court will require that the entirety of that reduction be paid personally by Mr. Rodriguez, pursuant to section 1927.

II.     *Plaintiffs' Sanctions*

On motion, the Court may order sanctions where a party fails to attend its own deposition.  Fed. R. Civ. P. 37(d)(1)(A)(i).  The available sanctions include ordering that matters at issue be treated as established, prohibiting claims or defenses implicated by the deposition, striking pleadings, staying proceedings until the deposition is held, dismissing all or part of a matter, or treating the failure to appear as contempt of court.  *See id.* 37(b)(2)(A)(i)-(v), (vii).  Whether or not such sanctions are imposed, "the court **must require** the party failing to act, the attorney advising that party, or both[6] to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  *Id.* 37(d)(3) (emphasis added).

This Court has already held that Plaintiffs' failure to appear at their depositions was not substantially justified.  Therefore, the only remaining question is whether

---

[6] This rule, therefore, authorizes the Court to require Plaintiffs' counsel to pay for the reasonable expenses as well.  Thus, even if the Court did not conclude that sanctions against Plaintiff's counsel were appropriate under section 1927, the court will alternatively order Plaintiffs' counsel to personally pay the same proportion of "reasonable expenses" under Rule 37.

requiring them to pay reasonable expenses would somehow be "unjust."  This court concludes that it would not.

First, Plaintiffs' failure to appear at their deposition was flagrant.  They were told repeatedly by their attorney that they must attend and yet refused.  Moreover, the bases for their refusals were utterly meritless.

Second, the amount of expenses sought by Defendants is not disproportionate to Plaintiffs' violation.  As will be discussed further below, the Court is requiring Plaintiffs to pay $3600 which is less than two-thirds of the amount expended by Defendants due to their violation.[7]  Both on an absolute and relative basis, this sanction is commensurate with the flagrancy of their violation.

Third, to the extent that inability to pay is relevant to an otherwise required order to pay "reasonable expenses" under Rule 37, it "should be treated like an affirmative defense, 'with the burden upon the parties being sanctioned to come forward with evidence of their financial status.'"  *Dodd Ins. Servs. v. Royal Ins. Co.*, 935 F.2d 1152, 1160 (10th Cir. 1991) (quoting *White v. GM Corp.*, 908 F.2d 975, 685 (10th Cir. 1990) (inability to pay analysis for discretionary Rule 11 sanctions).  Plaintiffs have done nothing to support their argument that they are absolutely unable to pay any sanction no matter the length of the payment plan.  Plaintiffs requested no hearing on this issue, offered no affidavits and offered no briefing until after Defendants were forced to file a

---

[7] Defendants' counsel's expenses were $2118.00 (*doc. 66*) plus $3371.75 (*doc. 69*) for a total of $5489.75.

subsequent motion in light of their failure to pay the ordered sanctions.  Even now, the

only evidence on this matter in the record comes from the Court's *sua sponte*

questioning of Plaintiffs.

Fourth, it appears to the Court that, even though Plaintiffs are subject to this

Court's order to pay the reasonable expenses for prior violations, they have not been

deterred from further violations.  *See Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1555 (10th Cir.

1996) ("'Rule 37 sanctions must be applied diligently both to penalize those whose

conduct may be deemed to warrant such a sanction, and to deter those who might b[e]

tempted to such conduct in the absence of such a deterrent.'").  As noted above,

Plaintiffs failed to appropriately address the issue of their claimed inability to pay the

ordered sanctions.  Plaintiff never moved the Court to set aside the sanctions based on

indigency.   Notably, their Objections to the sanctions amount did not even raise the

issue.  When advised that "[f]ailure to file any objections will be deemed acceptance of

the claim for fees as so modified," Plaintiffs filed none.  *Doc. 72.*  Apparently, Plaintiffs'

plan was to simply ignore the Court order requiring payment of the sanctions within

thirty days.  Even when responding to the second motion for sanctions, Plaintiffs' only

effort on this point[8] was to state that "Sharon Duttle is unable to commit to paying the

sanction amount especially in a lump sum, when the charges that were brought up

---

[8]  Plaintiffs' sole effort before this point had been a single sentence in the final page of a four-page
response in opposition to the original sanctions motion.  *See doc. 59* at 4.

against her and the computers that were confiscated destroyed the business of Shawn

Duttle that was helping the family survive. At this time, the Duttle family has limited

assets to be able to pay the imposed sanctions." *Doc. 83* at 2.  Despite having the burden

of establishing a financial inability to pay the sanctions, Plaintiffs did not even present

affidavits to support such a claim.  Instead, it fell to the Court to call a hearing to

investigate the claims.  Better still, at the hearing, the Court learned that Plaintiffs were

now claiming that no payment plan was possible despite having proposed it as an

option for the Court in their written Response.  Moreover, Plaintiffs' Response to the

instant motion was untimely.  Plaintiffs were ordered to pay over $5,000 dollars in

sanctions despite their present allegations that they would never have been able to

afford that sum.  Along with failing to even attempt to abide by the Court's order for

sanctions and, as a result, causing another sanctions motion to be filed due to Plaintiffs'

non-payment, Plaintiffs' response to that very motion was late.[9]

>    For all these reasons, the court concludes that it is not unjust to order Plaintiffs to

pay the reasonable expenses incurred due to their deliberate failure to appear for their

depositions.

---

[9] Under the rules of this Court, "a response must be served and filed within fourteen (14) calendar days
after service of the motion."  D.N.M.LR-Civ. 7.4(a).  When service is made electronically, the time period
is extended by a period of three days.  Fed. R. Civ. P. 6(d).  Defendants' Motion was filed on April 10,
2012.  *See doc. 79*.  As such, Defendants' Response was due no later than April 27, 2012.  That fact
notwithstanding, Defendants did not respond until May 1, 2012.  *See doc. 83*.

### *Adjustment to Sanction*

While the Court finds that Plaintiffs have not met their burden to establish that they are completely unable to pay any of the ordered sanctions, it concludes that it is in the interests of justice to modify the sanctions order.  The Court will reduce the amount owed by Plaintiffs and will establish a reasonable payment plan in light of Plaintiffs' relative lack of resources.  Specifically, the Court will reduce Plaintiffs' sanction amount from $5,248.50 to $3,600.  While each Plaintiff is jointly and severally liable for the full amount, the Court notes that, if each Plaintiff paid an equal amount, this order reduces the sanction to $1200 per Plaintiff.  Moreover, the Court will give the Plaintiffs twelve months to pay their sanctions.  So, the Plaintiffs must remit a payment of $300 each month to the payment of the sanction.  Again, if each Plaintiff contributes an equal amount to the sanction, this order would require only $100 per month per Plaintiff. Therefore, the Court has granted Plaintiffs a reduction of over $1,600 and eleven additional months to pay.  Moreover, the Court will not order any additional sanctions on the second motion for sanctions despite the fact that Defendants have prevailed on this motion.  *See* Fed. R. Civ. P. 37(b)(2)(C).  Plaintiffs are, however, expressly put on notice that failure to make any payment in a timely fashion will lead to a reconsideration of the decision to not recommend dismissal of this matter due to their failure to appear.  *See docs. 62, 76.*

The Court will order Plaintiffs' counsel to pay Defendants $1648.50 which is the amount of the reduction in Plaintiffs' sanction. This sanction of counsel is pursuant to Title 28 U.S.C. § 1927 and, alternatively, Rule 37.

The reapportionment of sanctions and creation of a payment plan is proper for three reasons. First, as to the Plaintiffs personally, the Court's reapportionment reduces the individual burden upon Plaintiffs by over one-third. Second, the reapportionment acknowledges that, although Plaintiffs are entirely culpable for their failure to appear for the depositions, counsel did possess an opportunity, via simple professionalism, to reduce the harm done by Plaintiffs' violations. Finally, the establishment of a lower total cost and longer time within which to pay effectively enables the Court to meet the goals inherent in sanctions without presenting an unreasonable burden on Plaintiffs.

The Court is firmly committed to the proposition that the lack of personal finances should never be an impediment to vindicating one's rights. Notwithstanding that commitment, the Court finds that the predicament Plaintiffs now find themselves in is due not to their financial status, but rather to their willful refusal to participate with the lawful requirements which attend filing a lawsuit. Because the Court wishes to provide an additional opportunity for Plaintiffs to continue with their suit, the Court will decline to recommend dismissal at this time.

Wherefore, IT IS HEREBY ORDERED that County Defendants' Motion for Sanctions Against Plaintiffs for Failure to Pay Court-Ordered Sanctions is GRANTED in

part.  The Court re-orders the payment of sanctions for Plaintiffs' failure to appear for

properly noticed depositions as well as for improper conduct by Plaintiffs' attorney as

provided herein.  The sum owed by Plaintiffs shall be reduced to $3,600 and Plaintiffs'

counsel, Augustine Rodriguez, shall be liable for the remaining $1,648.50.  Plaintiffs and

counsel are expressly advised that a failure to timely pay these sanctions will likely

result in dismissal of this case.

IT IS FURTHER ORDERED that Plaintiffs shall pay $300 dollars monthly to the

Brown Law Firm.  Said payments shall be due on the 12th of each month[10] beginning

with June 12, 2012 and continuing for the ensuing eleven months thereafter up to the

total of twelve (12) months and $3,600.

IT IS FURTHER ORDERED that Plaintiffs' counsel, Augustine Rodriguez, shall

pay $400 dollars monthly to the Brown Law Firm.  Said payments shall be due on the

first of each month beginning with June 1, 2012 and continuing until the payment of the

total of $1,648.50.  The final payment due in September shall be in the amount of

$448.50.

---

[10] The due date will refer to either the date of hand delivery of the payment to the Brown Law Firm or, in the alternative, to the date that a mailed payment is postmarked.  In the event that the payment date of any month falls on a federal holiday or Sunday, payment shall be hand delivered or postmarked by close of business on the next day that is neither a federal holiday nor a Sunday.

IT IS FURTHER ORDERED that the Brown Law Firm shall distribute 36% of each payment to Robles, Rael & Anaya, P.C. within a reasonable time of receipt of each month's installments.  *See doc. 76.*

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE