IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


NICHOLAS DUTTLE,
SHARON DUTTLE, SHAUN DUTTLE,

      Plaintiffs,

v.                                              Case No. 10-cv-839 MCA/GBW

CURTIS CHILDRESS, *et al.*

      Defendants.


## REPORT AND RECOMMENDATIONS

THIS MATTER is before the Court on Motions for Summary Judgment filed by Defendant Childress and the other County Defendants.[1]  *Docs. 124, 193, 194.*[2]  Having reviewed the briefing (*docs. 198-201, 203*) and applicable law, I recommend that the Court GRANT the Motions for Summary Judgment (*docs. 193, 194*).  I have previously recommended that Plaintiff Sharon Duttle's claims be dismissed.  *See doc. 176.*  Given that I recommend GRANTING Defendants' Motions for Summary Judgment (*docs. 193, 194*), and noting that Plaintiffs' Cross Motion for Summary Judgment was filed untimely (*see doc. 192* at 1), I recommend DENYING Plaintiffs' motion.

---

[1] The County Defendants include Robin Gojkovich, Robbie Acosta, Michelle Boudrie, Valier Heredia, Joe Herrera, Carlos Madrid, Linda S. Maldonado, John Martinez, Joe Padilla, Henry Rodrigues, Mary Lou Ward, and Travis Wells, who were employed as either animal control officers, codes officers, environmental codes officers, or as officers of the Doña Ana County Sheriff's Department.

[2] The County Defendants incorporated by reference their original Motion for Summary Judgment (*doc. 124*).  D.N.M.LR-Civ. 7.1(a)

I.      BACKGROUND

On September 15 and 16, 2008, officials from various County agencies, including

Defendants Robin Gojkovich and Curtis Childress, searched the residence of Plaintiffs

Sharon and Shaun Duttle located at 320 Vine Ave. in Mesquite, New Mexico.  *Doc. 1* at

2.  The searches were executed pursuant to two warrants, one issued on September 15

and the other on September 16.  *Doc. 124*, Exs. B-A1, B-B1.  As a result of the searches,

the officers seized thirty-eight (38) dogs and five (5) cats, as well as several other items

of personal property.  Sharon and Nicholas Duttle were charged with animal cruelty

and dogfighting.  *Id.* at 2-4.  On June 11, 2013, Sharon Duttle was convicted in *State v.*

*Duttle.  Doc. 193* at 2.  A charge of *nolle prosequi* was entered against Nicholas Duttle on

March 29, 2010.  *Doc. 124*, Ex. M.  Shaun Duttle was never criminally charged.

Plaintiffs filed the instant action on September 10, 2010.  *Doc. 1.*  The Complaint

alleges four federal claims: (1) violation Plaintiffs' Fourth Amendment rights on the

basis that the search warrants lacked probable cause; (2) violation of Plaintiffs' due

process rights both during and as a result of the execution of the search warrants; (3)

conspiracy under 42 U.S.C. § 1985(3) to violate Plaintiffs' rights by conducting a search

of their property without probable cause; and (4) failure to train and supervise based on

the unconstitutional execution of the search warrant.  *Doc. 1* at 3-4.  The Complaint also

raises several state tort claims.  *Id.*

On October 21, 2013, Defendants filed a joint Motion to Dismiss based on Sharon

Duttle's conviction.  *Doc. 132.*  I issued an order recommending that the Court find that Plaintiff Sharon Duttle's Fourth, Fourteenth, and failure to train and supervise claims were collaterally estopped by *State v. Duttle*, and that her remaining conspiracy claim failed as a matter of law.  *Doc. 176.*  Having concluded that Plaintiff Sharon Duttle's federal claims should be dismissed, I further recommended that the Court decline to exercise supplemental jurisdiction over her remaining state law claims and that she be dismissed from this matter.  *Id.*  Finally, I recommended that Plaintiffs Nicholas and Shaun Duttle's claims be held in abeyance pending a hearing on their federal causes of action.  *Id.*

    At a hearing held on November 11, 2014, I informed the parties that I anticipated recommending that the Court deny the Joint Motion to Dismiss as to Plaintiffs Nicholas and Shaun Duttle on *Heck v. Humphrey*, 512 U.S. 477 (1994) and collateral estoppel grounds.  *Doc. 191.*  A summary judgment briefing schedule was set at the hearing.  *Id.* Two motions for summary judgment were filed on January 20, 2015, one by Defendant Childress and the other by the County Defendants.  *Docs. 193, 194.*  In one document filed as three separate filings, Plaintiffs Nicholas and Shaun Duttle filed responses to both motions and a cross motion for summary judgment on February 5, 2015.  *Docs. 198-200.*  Because Sharon Duttle's claims were addressed in the first Report and Recommendations, I address only those claims related to Plaintiffs Nicholas or Shaun

Duttle in this Report and Recommendations.[3]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  The court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  Local Rule of Civil Procedure 56.1, which outlines summary judgment procedures, states that a response to a summary judgment motion:

> must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.

D.N.M.LR-Civ. 56.1(b).  Importantly, "[a]ll material facts set forth in [movant's]

---

[3] As such, unless otherwise specified, the term "Plaintiffs" hereinafter refers to Plaintiffs Shaun and Nicholas Duttle only.

Memorandum will be deemed undisputed unless specifically controverted."  *Id.*

Because Plaintiffs' response does not delineate which of Defendants material facts are

disputed, the undersigned deems the facts listed in Defendants' motions for summary

judgment to be undisputed.

Of final note, Defendants have invoked qualified immunity.  *Docs. 124, 193, 194.*

Qualified immunity protects public officials from liability "insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When a defendant asserts qualified

immunity at the summary judgment stage, the burden shifts to the plaintiff who . . .

must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional

right, and (2) the right was clearly established at the time of the alleged unlawful

activity." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (citations omitted).

"A constitutional right is clearly established when, at the time of the alleged violation,

the contours of the right were sufficiently clear that a reasonable official would

understand that his actions violate that right . . . ." *Id.*  Courts have discretion to decide

"which of the two prongs of the qualified immunity analysis should be addressed first

in light of the circumstances in the particular case at hand." *Leverington v. City of Colo.*

*Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

### III.   UNDISPUTED FACTS

**INVESTIGATION LEADING UP TO THE SEPTEMBER 15, 2008 WARRANT**

1.  On September 8, 2008, Defendant Gojkovich, an investigator with the Doña Ana County Sheriff's Department, was approached by Defendant Childress, the Department's Animal Cruelty Coordinator, with what Defendant Childress believed to be an animal hoarding case.  *Doc. 124*, Ex. B at 1, A at 2.

2.  Defendant Childress informed Defendant Gojkovich that he had received a phone call from Jim Duttle, Sharon Duttle's brother.  *Doc. 122*, Ex. A at 1.  Jim Duttle told Defendant Childress that he had received a call from an Elephant Butte Irrigation District (EBID) employee inquiring as to why Mr. Duttle had so many dogs at his property on 320 Vine Ave, Mesquite, NM.  *Id.* at 2.  The EBID employee had told Jim Duttle that there were fifty (50) or sixty (60) dogs located at the address on Vine Avenue.  *Id.*  Jim Duttle relayed this information to Defendant Childress and explained that the dogs did not belong to him, that he did not live on Vine Ave, that his sister, Sharon Duttle, did live at that address, and that she collects pit bulls.  *Doc. 194* at 3-4.

3.  At all times material to this case, Plaintiffs Sharon and Shaun Duttle resided at 320 Vine Ave.  *Doc. 194* at 1.

4.  Nicholas Duttle has not resided at 320 Vine Avenue since approximately 2006, and, at all times material to this case lived in Estes Park, Colorado.  *Id.*

5. On September 15, 2008, Defendants Gojkovich, Ward, and another animal control officer went to the property on Vine Avenue to investigate the tip. *Id.* at 4; *doc. 124*, Ex. B at 2. Unable to determine which property was 320 Vine Ave, the officers went to the rear of the property by way of an irrigation easement. *Doc. 124* at 3.

6. From the ditch at the back side of the property, the officers could not see how many animals were present due to an overgrowth of weeds, but they could hear multiple dogs barking on the property, which they later learned to be 320 Vine Ave. *Id.* at 3; *doc. 124*, Ex. B-A1 at 1. Defendant Gojkovich specifically remembered that she could hear "a lot of dogs." *Doc. 194* at 4.

7. Defendant Ward heard a dog barking or crying in distress. *Doc. 124* at 4.

8. Defendant Gojkovich also heard a dog making a strange noise, which she found concerning. *Doc. 194* at 4.

9. Defendant Gojkovich saw a dog, which appeared to be thin, chained to a stake on the property. *Id.* at 3-4. She was unable to determine whether the dog had access to water, but she observed that there was not adequate shade for the dog. *Id.* at 5.

10. While on the ditch, the officers were approached by an individual they later learned to be Shaun Duttle. *Id.* at 5. Defendant Gojkovich identified herself as a police officer and told the individual that they had received a report that there

were a lot of dogs on the property. *Doc. 124* at 4; *doc. 194* at 5. The individual

identified himself as Shaun Duttle and informed the officers that he lived at 320

Vine Ave. *Doc. 124*, Ex. B at 2. He was aware that the officers were from animal

control. *Doc. 194* at 5.

11. Shaun Duttle refused the officers' request to enter onto the property. *Id.* at 5. He

further claimed to be unsure about the number of dogs on the property, but

knew that there were more than seven. *Doc. 194* at 5; *doc. 122*, Ex. E at 2. He also

informed the officers that he had proof of vaccinations inside the house. *Doc. 194*

at 5. The officers then asked Shaun Duttle to meet them at the front gate of the

property. *Id.*

12. From the front gate, Defendant Gojkovich could hear dogs also barking from

inside the house. *Id.* at 6.

13. At the front gate, Shaun Duttle again refused to permit the officers to enter the

property. *Id.* He also did not provide vaccination records to the officers. *Id.*

14. At Defendant Gojkovich's request, Shaun Duttle called his mother, Sharon

Duttle. *Id.* Sharon Duttle told Defendant Gojkovich over the phone that

Defendant Gojkovich should not be on her property and that she would provide

proof of vaccinations the following Monday. *Id.*

15. Sharon Duttle refused Defendant Gojkovich's request to enter the property to

conduct a welfare check on the dogs and told Defendant Gojkovich that she

would need to obtain a warrant.  *Id.*

16. After speaking with Sharon Duttle, Defendant Gojkovich left to prepare a
    warrant.  *Id*.

**THE INITIAL WARRANT & SEARCH SEPTEMBER 15-16, 2008**

17. Defendant Gojkovich prepared a Statement of Facts in Support of Search
    Warrant, an Affidavit for Search Warrant, and a Search Warrant.  *Doc. 124*, Ex. B-
    A1.

18. Defendant Gojkovich's Statement of Facts noted, among other things, the EBID
    employee's statement about the presence of fifty to sixty dogs at the property,
    Defendant Gojkovich's observation of a chained dog without shade or shelter,
    and stated her belief "[t]hat it appeared that there [were] more then [sic] ten dogs
    staked out in the back of this property."  *Id.*, Ex. B-A1 at 1-2.

19. Defendant Gojkovich's Statement of Facts concluded that a search warrant was
    needed to investigate potential animal cruelty and "to check the health and
    welfare of the animals located at 320 Vine Ave Mesquite NM."  *Id.*, Ex. B-A1 at 2.
    She also stated her belief that Sharon Duttle was in violation of the Doña Ana
    County Animal Control Ordinance.  *Id.*

20. Defendant Gojkovich's Affidavit for Search Warrant identified 320 Vine Avenue
    as the place to be searched and that she believed animals, "items pertaining to
    the care and maintenance of these animals," and records relating to ownership of

the animals would be found.  *Id.*, Ex. B-A1 at 3.

21. Defendant Gojkovich's application materials were telephonically approved by prosecutor Amy Orlando.  *Id.*, Ex. B-A1.

22. The Search Warrant and other materials were presented to and signed by the on-call state magistrate judge, Judge Oscar Fritz around 7:50 p.m. the evening of September 15, 2008.  *Id.*, Ex. B-A1 at 4.

23. Upon receiving the warrant, Defendants Gojkovich, Childress, Ward, and other officers from various departments returned to the Duttle residence to execute the warrant.  *Doc. 124* at 5.  When they arrived around 8:15 p.m., it was dark.  *Doc. 194* at 7-8.

24. Defendants Gojkovich and Childress were the first to encounter Sharon Duttle, who told them to leave the property.  *Id.* at 7.   They informed her that they had a warrant, which she requested to see.  *Id.*

25. The officers began to search the property, but given the uncertainty of the dogs' nature and the low visibility due to the high weeds and darkness, the search was stopped for safety reasons.  *Id.* at 8.

26. Defendant Gojkovich informed Sharon Duttle that they were stopping the search for the night and that she would take pictures of the inside of the home so that Sharon and Shaun could remain on the property overnight so long as nothing was moved.  *Id.* at 9.

27. While inside taking pictures, Defendant Gojkovich discovered a dog in a

bedroom that was "screaming and crying" and making a "horrible sound." *Doc.*

*122*, Ex. A at 32.  The dog appeared to be emaciated and partially paralyzed and

was moving in a circle because it could only use one of its legs.  *Doc. 194* at 9.

The dog was seized on September 15, 2008.  *Id.*  The dog was euthanized the

same day on an emergency basis, given its condition.  *Id.* at 12.

28. The search continued the next day, on September 16, 2008.  *Id.* at 9.

**The September 16, 2008 Warrant & Completion of the Search**

29. At some point during the September 16 search, because the officials had

discovered evidence associated with dog fighting, Defendant Gojkovich stopped

the search to apply for a second warrant. *Doc. 124* at 5.  The dogs were "dog

aggressive," there were scars on their faces, ears, and legs, and a number had

filed teeth.  *Id.* at 10.  A "keep journal" was also found, which is allegedly used to

document training and preparation for dog fighting.  *Id.*  Defendant Gojkovich

also found a document noting the number of minutes that certain dogs had been

videotaped.  *Doc. 124*, Ex. B-B1 at 3.  This information led Defendant Gojkovich

to believe that the dogs had been used in dog fights.  *Id.*

30. The application materials and second warrant incorporated much of the same

information from the initial application, but added information discovered as a

result of the searches up to this point, such as the discovery of the "keep"

journal, that "all of the 36 Pit-bull Terriers appeared to b[e] dog aggressive," and the scars and filed teeth on several of the dogs. *Doc. 124*, B-B1 at 3.

31. The second warrant added the following items to be seized:

> Hard drives; (emails, photographs, advertisement, email addresses, records, financial records), video tapes, cameras, 35 mm film, video records, photographs, negatives, medication, bite sticks, harnesses, weights, documentation on training to dog fight, keep records, journals on the dogs and training records, training equipment, teeth filing tools and any other item or document that would assist in the Investigation of Dog fighting and Animal Cruelty.

32. Magistrate Judge Fritz reviewed the materials for the second warrant and approved it on September 16, 2008, at 7:50 p.m. *Id.* at 6.

33. Upon receiving the second warrant, the officers continued the search. *Id.* at 6.

34. The September 15 and 16 searches resulted in the seizure of thirty-eight (38) dogs and five (5) cats. *Id.* at 6. Medications, harnesses, computer hard drives, photographs, a "bite stick," which is used to pry a dog's jaw open when they are fighting, and videotapes and DVDs were also seized, including a video showing Nicholas Duttle taking part in a dog fight. *Id.*

35. Sharon Duttle stated in the Complaint that the dogs belonged to her. *Doc. 1* at 3.

36. Nicholas and Shaun Duttle[4] did not own any of the dogs seized as a result of the searches. *Doc. 124*, Exs. D, H; *see also doc. 1* at 1.

---

[4] Shaun Duttle disavows ownership in any of the dogs, but "believes" that one of the dogs seized "was actually papered under [his name]." *Doc. 124*, Ex. D; *see also Doc. 1* at 1 (The Complaint uses language such as "the pets and possessions of Sharon Duttle . . ." and "[t]he defendants seized her pets").

37. Beyond the animals, the Complaint claims only that "defendants seized CDs, computer games, family photographs, and a Playstation game, property of Shaun and Sharon Duttle." *Doc. 1* at 3.

38. On September 15 and 16, 2008, Sharon Duttle signed three separate release forms for some of the dogs indicating that she was the owner of the animals and was surrendering and "relinquish[ing] all right and title to the Animal Services Center of the Mesilla Valley for such disposition as the Center deems advisable." *Doc. 124*, Ex. K.  The form further indicated that the signer, understood "that such disposition may include the humane euthanasia of the animal . . . and that [the signer] may not be informed of the final disposition of the animal." *Id.*

39. Of the dogs seized, between September 15, 2008 and October 20, 2008, all but seven (7) were euthanized. *Doc. 194* at 12.  Two (2) died in their kennels in December 2008. *Id.*  As of August 16, 2012, five (5) of the dogs were still alive and on a court hold pending completion of Sharon Duttle's criminal proceedings. *Doc. 124* at 7.

40. On September 19, 2008, Defendant Gojkovich signed a "receipt" indicating that she had received a form from Sharon Duttle seeking to rescind her release of the animals. *Id*.

41. Plaintiffs Nicholas and Sharon Duttle were charged with sixty-three (63) criminal violations, including dogfighting, conspiracy, maliciously torturing an animal,

cruelty to animals, as well as other violations.  *Doc. 124* at 8.

42. A *nolle prosequi* without prejudice was issued as to the charges against Nicholas
    Duttle on March 29, 2010.  *Doc. 124*, Ex. M.

43. On June 14, 2013, Sharon Duttle was convicted by a jury of twenty-one (21) of the
    twenty-two (22) charges brought against her at trial.  *Doc. 193* at 2.

44. Individual Defendants Curtis Childress, Robbie Acosta, Michelle Boudrie, Valier
    Heredia, Joe Herrera, Carlos Madrid, Linda S. Maldonado, John Martinez, Joe
    Padilla, Henry Rodrigues, Mary Lou Ward, and Travis Wells, were employed as
    either animal control officers, codes officers, or environmental codes officers
    during September 2008.  *Doc. 124* at 9; *doc. 194* at 2.

45. Defendant Gojkovich was employed as an investigator for the Doña Ana County
    Sheriff's Department in September 2008.  *Doc. 124*, Ex B at 1.

## IV.   ANALYSIS

Plaintiffs raise four federal claims in their Complaint: (1) violation of Plaintiffs'
Fourth Amendment rights on the basis that the search warrants lacked probable cause;
(2) violation of Sharon Duttle's due process rights both during and as a result of the
execution of the impugned search warrants; (3) conspiracy under 42 U.S.C. § 1985(3) to
violate Plaintiffs' rights by conducting a search of their property without probable
cause; and (4) failure to train and supervise based on the unconstitutional execution of
the search warrant.  *Doc. 1* at 3-4.

I recommend finding that Defendants are entitled to summary judgment on the basis of qualified immunity on all of Plaintiffs' claims because their constitutional rights were not violated. Accordingly, I recommend that the Court dismiss all of Plaintiffs' federal claims. I further recommend, as outlined in my initial Report and Recommendations, that the Court refuse to exercise supplemental jurisdiction over Plaintiffs' state law claims and that the case be dismissed in its entirety.

### A.    Plaintiffs' Fourth Amendment Rights Were Not Violated

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation. . ." U.S. Const. amend. IV. As a threshold matter, the ability "to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 129, 143 (1978)). Here, it is undisputed that "Nicholas Duttle was living out of the state prior to, during, and after the raid and is still a resident of Colorado." *Doc. 198* at 3. Consequently, Nicholas Duttle did not have a legitimate expectation of privacy that could be violated in the search of 320 Vine Ave. *See Carter*, 525 U.S. at 90. Shaun Duttle, however, was a resident of the home searched and therefore retained the ability to assert Fourth Amendment protections. *See Carter*, 525 U.S. at 90.

In any event, no Fourth Amendment violation occurred in this case.  Where, as here, "the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'"  *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922–923 (1984)).  An exception to this rule exists where "it is obvious that no reasonably competent officer could have concluded that a warrant should issue."  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 346, n. 9 (1986)).  "[T]he threshold for establishing this exception is a high one" because "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination."  *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 921 (1984)).  Though developed in the context of criminal cases, good faith reliance on a warrant is also a defense to civil claims brought under 42 U.S.C. § 1983.  *Id.* at 1245 n. 1.

Thus, whether the defendant officers in this case may be held liable under the Fourth Amendment for executing and seizing property pursuant to a search warrant depends upon whether it was obvious that the warrants should not have been issued. Plaintiffs' Complaint avers that the search was conducted "without a warrant based on probable cause," *doc. 1* at 3, and their response asserts that Defendants Gojkovich and Childress "went by triple hearsay" in obtaining the warrant, *doc. 198* at 3.  Hearsay is a rule of evidence that has no application to "miscellaneous proceedings such as . . .

issuing an arrest warrant, criminal summons, or search warrant." FED. R. EVID. 1101(d)(3).  The narrower issue then is whether the materials on which the warrants issued were based were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-611 (1975).

Based on the information presented to Magistrate Judge Fritz, the undersigned recommends finding that the warrant was supported by probable cause and that Defendants relied on the warrant in good faith.  "In determining whether probable cause exists to issue a warrant, the issuing judge must decide whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Poolaw v. Marcantel*, 565 F.3d 721, 729 (10th Cir. 2009) (citations and quotations omitted).   "Probable cause exists when the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." *United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004) (citations and quotations omitted).  The validity of a warrant is assessed "on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing [judge]." *Poolaw*, 565 F.3d at 729 (citations and quotations omitted).

Here, the searches of the Duttle residence on September 15 and 16, 2008, were executed pursuant to two warrants, each signed by Magistrate Judge Oscar Fritz.  The

warrants were issued based on the materials submitted by Defendant Gojkovich, in which she indicated to Judge Fritz her belief that Sharon Duttle was "in violation of the Doña Ana County Animal Control regulations and Ordinances regarding the numbers of animals she can own," and recited her basis for this belief.  *Doc. 124*, B-A1.  She further stated her belief that "a search warrant is needed to investigate . . . extreme animal cruely/animal [sic] cruelty and to check the health and welfare of the animals located at 320 VineAve.Mesquite NM."  *Id.*

1. *The initial search warrant was supported by probable cause to believe that there were more animals on the property than permitted by County Ordinance.*

The County Ordinance in effect at the time of the challenged search prohibited keeping "more than a combined total of six dogs and/or cats in any combination thereof over the age of three months without a valid multiple animal site permit."  Doña Ana County Animal Control Ordinance, No. 203-2002 Art. IV § 5-3(a) (2002) (hereinafter "County Ordinance").  Even with a permit, the absolute number of dogs or cats or combination thereof permitted was only fifteen (15).  County Ordinance § 5-3(b).  The warrant application materials noted the EBID employee's observation that fifty (50) to sixty (60) dogs were present at 320 Vine Ave, and "[t]hat Jim Duttle stated that his sister Sharon Duttle collects pit-bulls."  *Doc. 124*, Ex. B-A1.  The materials also indicated that, based upon Defendant Gojkovich's personal observations, there were more than ten dogs staked out in the back of the property.  *Doc. 124*, Ex. B-A1 at 1.  The materials noted that Defendant Gojkovich had learned from Shaun Duttle "that he [did] not know

how many dogs he had on the property," and "that he [thought] there [were] ten dogs on the property." *Id.*  Finally, Defendant Gojkovich stated that Sharon Duttle had informed her over the phone "that there [were] only seven dogs on the property." *Id.*

An individual of reasonable caution could very well have believed that evidence that there were more dogs on the property than permitted by County Ordinance given (1) the large number of dogs that had been observed on the property; (2) Defendant Gojkovich's observations at the property; (3) that Sharon Duttle was alleged to have collected pit bulls; (4) that Shaun Duttle was unable to indicate how many dogs were on the property; and (5) that he and Sharon Duttle provided inconsistent answers as to how many dogs were present.  Thus, probable cause existed to support the initial search warrant on this ground alone.

2.  *The initial search warrant was supported by probable cause to believe that the animals were being mistreated in violation of state law, county law, or both.*

In addition to the number of dogs, probable cause also existed as to the potential mistreatment of the animals on the property.  Under New Mexico law, "[i]f the court finds probable cause that the animal is being cruelly treated, the court shall issue a warrant for the seizure of the animal."  N.M. STAT. ANN. § 30-18-1.l (West 2007). Cruelty to animals includes, among other things, "negligently mistreating" an animal. N.M. STAT. ANN. § 30-18-1 (West 2007).  Moreover, the County Ordinance also required that a restrained animal "must have easy access to adequate shade, shelter, food and potable water." County Ordinance § 5-4(c)(3).  Defendant Gojkovich observed a thin

dog surrounded by weeds without adequate shade or shelter and indicated as much in her warrant application materials.  *Doc. 124*, Ex. B-A1 at 1.  Both she and Defendant Ward heard noises that led them to believe that there was an animal in distress on the property, and her application materials indicated that she "hear[d] a strange crying no[i]se, which did appear to coming from a dog."  *Id.*  Given these observations, an individual of reasonable caution could have believed that evidence pertaining to the negligent mistreatment of animals, as well as improperly restrained animals, could be found at 320 Vine Ave.  Thus, probable cause also existed to support the initial search warrant on these grounds.

3.  *The second search warrant, which expanded the scope of the items that could be seized, was also supported by probable cause.*

The second search warrant incorporated the same information outlined in the previous two subsections.  *Doc. 124*, Ex. B-A1, B-B1.  It further noted that "all of the 36 Pit-Bull Terriers [discovered pursuant to the first warrant] appeared to be dog aggressive," that a "keep" journal was found, which in Defendant Gojkovich's experience had been used to keep records of "training preparation for dog fighting," and that "several of the Pit-bull Terrier[s] had scars on the face, ears, and legs . . . [and] [t]hat some had their teeth filed flat and some had their teeth filed sharp."  *Doc. 124*, Ex. B-B1 at 3.  Given this information, an individual of reasonable caution could have believed the additional items seized pursuant to the second warrant contained evidence of dog fighting.

I therefore recommend finding that probable cause based on the animal cruelty statute, the County Ordinance, or a combination thereof existed to support the each search warrant.  Even assuming that whether probable cause existed to support either warrant was a close question, which I do not believe to be the case, it most assuredly cannot be said that the information supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Leon*, 468 U.S. at 923.  As a result, no Fourth Amendment violation occurred and the Court should find that all of the Defendants are entitled to summary judgment on Plaintiffs' Fourth Amendment claim.

## B.      Plaintiffs' Due Process Rights Were Not Violated.

In evaluating whether there has been a due process violation, the "standard analysis . . . proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.  Such entitlements are . . . not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal citations

omitted).

Individuals undoubtedly retain a property interest in their personal belongings. However, having independently found that probable cause existed to support both search warrants, I recommend finding that what is true for Plaintiff Sharon Duttle is also true for Plaintiffs Shaun and Nicholas Duttle: a proper finding of probable cause by a neutral magistrate afforded all the process that was required prior to the seizure of their property.[5]  Thus, the initial seizure of Plaintiffs' property did not violate due process.

Plaintiffs' responses to the motions for summary judgment assert that their personal belongings have not yet been returned to them.  *Doc. 198* at 1.  But they have not pointed the Court to any legal authority establishing that they are currently entitled to retrieve property that was lawfully seized as part of a criminal case, which is still pending on appeal.  *See doc. 191* at 3.  They have not demonstrated that they are entitled to the return of their property as a matter of course, let alone when or under what circumstances.  *See Stange v. Adent*, 533 P.2d 113, 116 (N.M. 1975) (finding plaintiff

---

[5] In Plaintiffs' response, Nicholas Duttle avers for the very first time that some of his personal belongings were seized.  Plaintiffs Complaint, however, does not allege that any of his personal property was taken.  *See generally doc. 1* (Under the cause of action labeled "Violation of Due Process Rights," Plaintiffs state that "*the pets and possessions of Sharon Duttle,*" were improperly taken, and that "defendants seized CDs, computer games, family photographs, and a Playstation game, *property of Shaun and Sharon Duttle.*") (emphasis added).  Additionally, Plaintiff Nicholas Duttle represented to the Court that his damages arose exclusively from his prosecution.  *Doc. 191* at 2.  Finally, Plaintiffs' response does not indicate with any particularity which items belonged to Nicholas Duttle.  In light of the foregoing, it appears to the undersigned that Plaintiff Nicholas Duttle did not have any personal belongings seized from the property on September 15 or 16, 2008.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (If the non-moving party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.").

entitled to recover reasonable value of legal fireworks destroyed along with illegal fireworks where the "undisputed evidence" established "that defendants wrongfully obtained possession of the legal fireworks, wrongfully detained them after demand therefor by the owner, and destroyed them.").  Moreover, there is nothing to suggest that Plaintiffs have made any requests for the return of the property, let alone that such requests have been rebuked.

Further still, Plaintiffs have not provided any facts demonstrating that the individual Defendants are responsible for the continued possession of either Plaintiff's property.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

For the foregoing reasons, Plaintiffs have failed to carry their burden of demonstrating that Defendants violated their constitutional right to due process. *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) ("When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff who . . . must demonstrate, on the facts alleged, that . . . the defendant violated a constitutional right.").  Accordingly, I recommend finding that Defendants are entitled to summary judgment on Plaintiffs' Fourteenth Amendment due process claim.

### C.   Plaintiffs' Failure to Train Cause of Action

As outlined in the initial Report and Recommendations, Plaintiffs' failure to train

and supervise claims also ultimately rest on the sufficiency of the search warrant.  A

municipality may not be held liable under § 1983 for a failure to train and supervise

"where there was no underlying constitutional violation by any of its officers."  *Graves*

*v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Los Angeles v. Heller*, 475

U.S. 796, 799 (1986)).  Because the search at issue here was not unconstitutional,

Plaintiffs' failure to train and supervise claim fails as well.  Thus, Defendants are

entitled to summary judgment on this claim.

      **D.**     **Plaintiffs' Conspiracy Under § 1985(3)**

      Plaintiffs also allege that the Defendants conspired to violate their civil

rights under 42 U.S.C. § 1985(3).  A plaintiff seeking recovery for a private

conspiracy in violation of § 1985(3) must show "(i) a conspiracy, motivated by

racially-discriminatory animus; (ii) to deprive the plaintiff of equal protection or

equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv)

an injury or deprivation resulting therefrom."  *Archuleta v. City of Roswell*, slip

op., 2012 WL 4950324, at *5 (D.N.M. Sept. 30, 2012).  Plaintiffs do not allege, and

provide zero factual support to suggest, that any of the Defendants' actions were

motivated by racial animus as required for a claim under § 1985(3).  Because

Plaintiffs have not put forth any facts to support a claim for conspiracy under §

1985(3), this claim should be dismissed as well.

**E.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims**

Plaintiffs' Complaint sets forth numerous state law claims for which the record does not reflect any basis for diversity jurisdiction. *See McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008) (statutory diversity requires citizenship of all defendants be different from the citizenship of all plaintiffs). Consequently, any jurisdiction over these claims would be an exercise of the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Upon dismissal of Plaintiffs' federal claims, this Court must decide whether or not it will adjudicate any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). When all federal claims have been dismissed from a case, supplemental state claims will ordinarily be dismissed without prejudice. *Roe v. Cheyenne Mountain Conference Resort*, 124 F.3d 1221, 1237 (10th Cir. 1997). Because I recommend dismissing all the claims over which this Court has original jurisdiction and because I see no reason to depart from the ordinary rule, I also recommend that the Court decline to exercise jurisdiction over Plaintiffs' remaining state law claims and dismiss them without prejudice.

**IV.    CONCLUSION**

For the forgoing reasons, I recommend granting Defendants' Motion for Summary Judgment (*docs. 193, 194*) as to the claims of Plaintiff Nicholas Duttle and

Plaintiff Shaun Duttle.   I recommend that Plaintiffs Nicholas and Shaun Duttle's federal claims be dismissed with prejudice.  I recommend that the Court decline to exercise supplemental jurisdiction over their remaining state law claims and dismiss them without prejudice.  Consequently, I recommend denying Plaintiffs' Cross Motion for Summary Judgment (*doc. 200*).  Finally, I recommend denying as moot Defendants' Motion to Dismiss as to Plaintiff Nicholas Duttle and Plaintiff Shaun Duttle (*doc. 152*).[6]

In addition to the electronic service, the Clerk is directed to mail a copy of this order to Plaintiffs Sharon and Shaun Duttle at P.O. Box 747, Mesilla Park, NM 88047 and to Plaintiff Nicholas Duttle at P.O. Box 4418 Estes Park, CO 80517.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

[6] The undersigned's recommendation to grant Defendants' Motion to Dismiss (*doc. 152*) as to Plaintiff Sharon Duttle (*see doc. 176*) remains unchanged.