IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICHOLAS DUTTLE,
SHARON DUTTLE, SHAUN DUTTLE,

    Plaintiffs,

v.                                                                             Case No. 10-cv-839 MCA/GBW

CURTIS CHILDRESS, *et al.*

    Defendants.

## ORDER OVERRULING PLAINTIFFS' OBJECTIONS AND ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITIONS

THIS MATTER is before the Court on Plaintiff Sharon Duttle's Objections (*doc. 181*) to the Magistrate Judge's first Proposed Findings and Recommended Disposition (PFRD) (*doc. 176*), which recommended granting Defendants' Joint Motion to Dismiss (*doc. 152*), and on Plaintiffs Shaun and Nicholas Duttle's Objections (*doc. 211*) to the Magistrate Judge's second PFRD (*doc. 205*), which recommended granting Defendants' Motions for Summary Judgment (*docs. 193, 194*). Being fully advised, the Court will overrule all of the objections, adopt both PFRDs, and dismiss the action.

I.     PROCEDURAL BACKGROUND

Plaintiffs filed the instant action on September 10, 2010. *Doc. 1.* The Complaint alleged a variety of causes of action under the Fourteenth and Fourth Amendments, as well as several state tort claims. *Id.* On October 1, 2012, the Court, on motion, granted a

stay pending resolution of a related state criminal prosecution, *State v. Duttle*, CR-2009-1033, then proceeding in the Third Judicial District of New Mexico. *Doc. 50.* On June 14, 2013, Sharon Duttle was convicted in *State v. Duttle.* On October 21, 2013, Defendants filed a Joint Motion to Dismiss based on her conviction, which was fully briefed on May 21, 2014. *Doc. 170.*

The Magistrate Judge's first PFRD focused on whether Plaintiff Sharon Duttle's Complaint failed as a matter of law. He recommended finding that Plaintiff Sharon Duttle's Fourth, Fourteenth, and failure to train and supervise claims were collaterally estopped by *State v. Duttle*, and her remaining 42 U.S.C. § 1985(3) conspiracy claim failed as a matter of law. *Doc. 176* at 6. The Magistrate Judge further recommended refusing to exercise supplemental jurisdiction over her state law claims and dismissing Plaintiff Sharon Duttle from the action. *Id.*

As to Plaintiffs Nicholas and Shaun Duttle, the Magistrate Judge's first PFRD recommended holding their claims in abeyance pending a hearing. *Id.* At a hearing held on November 11, 2014, the parties were informed that the Magistrate Judge anticipated recommending that the Court deny the Joint Motion to Dismiss as to Plaintiffs Nicholas and Shaun Duttle on *Heck v. Humphrey*, 512 U.S. 477 (1994) and collateral estoppel grounds. *Doc. 191.* A summary judgment briefing schedule was then set to address the merits of these Plaintiffs' claims. *Id.* Two motions for summary judgment were filed on January 20, 2015, one by Defendant Childress and the other by

the County Defendants. *Docs. 193, 194*. In one document filed as three separate filings, Plaintiffs Nicholas and Shaun Duttle filed responses to both motions and a cross-motion for summary judgment on February 5, 2015. *Docs. 198-200*.

The Magistrate Judge's second PFRD addresses the Motions for Summary Judgment, which concern only Plaintiffs Nicholas and Shaun Duttle's claims. The Magistrate Judge recommended dismissing their Fourth Amendment claims because the warrant authorizing the seizure of Plaintiffs' property was supported by probable cause,[1] and, alternatively, because the individual Defendants relied in good faith on the warrants. *Doc. 205* at 16-21.

The Magistrate Judge further recommended dismissing their Fourteenth Amendment claims because these Plaintiffs had not demonstrated that they were legally entitled to the property that was properly seized as part of a criminal case, which was pending on appeal, and because they failed to demonstrate that the individual Defendants were responsible for returning their property. *Doc.* at 21-23. Having found no underlying constitutional violation, the Magistrate Judge also recommended dismissing Plaintiffs' failure to train claims. *Id.* at 22-23.

Next, the Magistrate Judge recommended dismissing their 42 U.S.C. § 1985(3) claim because Plaintiffs Nicholas and Shaun Duttle entirely failed to demonstrate that

---

[1] Because Plaintiff Nicholas Duttle was not a resident of the property searched and did not otherwise have a legitimate expectation of privacy in the residence, Judge Wormuth also recommended finding that he lacked standing under the Fourth Amendment to challenge the search. *Doc. 205* at 15 (citing *Minnesota v. Carter*, 525 U.S. 83, 90 (1998)).

3

"a conspiracy, motivated by racially-discriminatory animus" existed. *Id.* at 24 (quoting 42 U.S.C. § 1985(3)). Finally, having disposed of all of Plaintiffs Nicholas and Shaun Duttles' claims, the Magistrate Judge recommended refusing to exercise supplemental jurisdiction over their state law claims. *Id.* at 25.

## II.   JOINT MOTION TO DISMISS

As noted above, the Magistrate Judge found that Plaintiff Sharon Duttle's Fourth Amendment, Fourteenth Amendment, and failure to train claims, which hinged on the validity of the search warrants at issue here, were collaterally estopped by her state criminal conviction. *Doc. 176* at 7-12. The Magistrate Judge noted that federal courts, applying state collateral estoppel law, are to "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* at 6 (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). The Magistrate Judge found that the validity of the search warrants at issue was collaterally estopped under New Mexico law because (1) the matter had been actually litigated and necessarily decided in state court, and (2) Plaintiff Sharon Duttle had had a full and fair opportunity to litigate this issue in that forum. *Id.* at 7-12 (citing *Deflon v. Sawyers*, 137 P.3d 577, 583 (2006)).

In her objections, Plaintiff Sharon Duttle pointlessly directs the majority of her attention to the merits of her case rather than to whether she is collaterally estopped from pursuing here. The portions that can be construed as addressing collateral

4

estoppel are concerned with whether she had a fair opportunity to be heard in state court. She states, in conclusory fashion, that "[t]he warrants were not argued well by her attorneys," that "Eric Elsenheimer never argued the dismissal of the warrants concerning the animal charges," and that the ruling was "improper . . . due to insufficient information." *Doc. 181* at 2.

These objections are insufficient to undermine the Magistrate Judge's recommendations. To begin, because a multiday hearing was held on her motion to suppress, which was filed by attorney Eric Elsenheimer and argued by attorney Albert Costales, it is highly doubtful that the state district judge lacked sufficient information to review whether probable cause existed. *Doc. 176* at 8, n. 4. Similarly, Plaintiff's mere statement that the motion was "not argued well" fails to undercut the Magistrate Judge's finding that Plaintiff Sharon Duttle had a fair opportunity to previously argue a lack of probable cause to support the warrant at issue. Furthermore, the Magistrate Judge correctly determined that the state district judge would have had to find that the warrants were supported by probable cause in denying her motion to suppress. Accordingly, the Court OVERRULES these objections and adopts the Magistrate Judge's PFRD with respect to these claims.

As to Sharon Duttle's 42 U.S.C. § 1985(3) claim, Plaintiff does not levy any meaningful objections against the Magistrate Judge's finding that this claim fails as a matter of law. Her sole, tangentially related statement on the matter is that

"[Defendant] Childress has had complaints filed against him for various racial discrimination issues." *Doc. 181* at 2. This lone, conclusory allegation does not in any way impair the Magistrate Judge's finding that she failed to plausibly state a claim that a conspiracy existed to violate her constitutional rights on the basis of her race. Accordingly, the Court OVERRULES this objection and adopts the Magistrate Judge's PFRD with respect to this claim.

Finally, because I concur in the Magistrate Judge's disposition of Plaintiff Sharon Duttle's other federal claims, on which her failure to train claims are predicated, I also concur in the Magistrate Judge's finding that her failure to train claim is collaterally estopped. I therefore adopt the Magistrate Judge's PFRD recommended disposition of this claim as well.

### III.  MOTIONS FOR SUMMARY JUDGMENT

#### A. Fourth Amendment

The Magistrate Judge recommended finding that neither Plaintiff Nicholas nor Shaun Duttle's Fourth Amendment rights were violated pursuant to the searches of the Duttle residence or any actions leading thereto.

*1. Plaintiff Nicholas Duttle lacks Fourth Amendment standing to challenge the search*

To begin, I concur in the Magistrate Judge's finding that Plaintiff Nicholas Duttle lacks Fourth Amendment standing to challenge the search of the residence. Plaintiffs' objections reiterate that Nicholas Duttle has not lived at 320 Vine Avenue for several

years (*doc. 210* at 4), and was neither present nor living in the state at the time it was searched in 2009, (*id.* at 5).  *See also doc. 198* at 3.  Thus, having no legitimate expectation of privacy in the premises searched, Plaintiff Nicholas Duttle cannot now allege that his Fourth Amendment rights were violated.  *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

I therefore OVERRULE Plaintiff Nicholas Duttle's objections, adopt the PFRD, GRANT the Defendants' Motions for Summary Judgment, and DISMISS Plaintiff Nicholas Duttle's Fourth Amendment claim with prejudice.

   2. *The search of Plaintiff Shaun Duttle's residence was valid under the Fourth Amendment*

The Magistrate Judge further recommended finding that Plaintiff Shaun Duttle did have standing to challenge the search, but that his Fourth Amendment rights were not violated.  The Magistrate Judge reviewed the circumstances of the search and found that the search warrants were supported by probable cause.  *Doc. 205* at 17-21.  The Magistrate Judge also found that, even assuming there had not been probable cause to support the warrant, the Defendants could have relied on the warrant in good faith given that the information supporting it was not "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  *Id.* at 21 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).  Plaintiff Shaun Duttle's objections (1) point to alleged constitutional violations preceding the warrant, (2) attack the information on which the finding of probable cause was predicated, and (3) assert that the warrant presented during the first search was unsigned.  *See generally doc. 211*.

> 3. *Plaintiffs' Fourth Amendment rights were not violated prior to execution of the warrant*

The Magistrate Judge found that probable cause was supported by the Defendant officials' personal observations at the Duttle residence. *Doc. 205* at 17-20. Defendant Gojkovich and two other officials had heard numerous dogs barking and had observed a staked out dog from an irrigation ditch adjacent to the rear of the property. *See Doc. 207*, Ex A. The objections assert that, in accessing the ditch, the Defendants trespassed onto private property—though not the Duttle's private property. *Doc. 211* at 4 ("[Defendant] Goykovich [sic] states under oath that she didn't request permission to enter Mr. Holbrooks [sic] property, admittance of criminal trespass."). Even assuming this to be true, it does nothing to advance Plaintiffs' position.

To be sure, when law enforcement trespasses onto private property, Fourth Amendment protections may be implicated, *see, e.g., Florida v. Jardines*, 133 S. Ct. 1409 (2013), but the individual whose rights are violated is the one to whom the property belongs. "This is because 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'" *United States v. Davis*, 750 F.3d 1186, 1190 (10th Cir. 2014) (citations omitted). Thus, for the same reason Plaintiff Shaun Duttle cannot challenge the search of his mother's and brother's residence, none of the Plaintiffs can challenge a trespass onto their neighbor's property on the grounds that it violates *their* Fourth Amendment rights. *See id.* (holding defendant lacked standing to challenge warrantless attachment of GPS device to accomplice's girlfriend's car where he had neither a

8

possessory interest nor a reasonable expectation of privacy in the vehicle). In a separate filing, Plaintiffs provide a map of the area on which they mark their property boundary with a yellow line and note where various actions by some of the Defendants took place. *See doc. 207*, Ex A at 1. Importantly, none of Plaintiffs notations indicate that any of the Defendants were on their property prior to the execution of the search warrant. *Id.*

Nor can Plaintiffs assert that, under the circumstances, law enforcement's simply viewing their property from adjacent farm land violated their Fourth Amendment rights. *See, e.g., Widgren v. Maple Grove Township*, 429 F.3d 575, 579-80 (6th Cir. 2005) ("[Official']s conduct in his initial visit to the [defendant's] property, while perhaps a trespass, was not a search under the Fourth Amendment" where observation of property occurred from open field).

  4. *Defendants' execution of the search warrants at the Duttle residence did not violate Plaintiffs' Fourth Amendment rights*

Plaintiffs next challenge the facts on which the Magistrate Judge relied in finding that the warrants were supported by probable cause. The Magistrate Judge found that there was probable cause to believe that there were more dogs on the property than permitted by a county ordinance and that evidence of other county ordinance violations and animal cruelty might be found on the property. *Doc. 205* at 18-20. In making this determination, the Magistrate Judge noted that a large number of dogs had been observed on the property by an Elephant Butte Irrigation District employee, that some

9

of the Defendants traveled to the property to corroborate this information, that Plaintiff Sharon Duttle's brother told Defendant Childress that she collected pit bulls, that Shaun Duttle was unsure of how many dogs were on the property, and that Shaun and Sharon Duttle gave inconsistent answers as to the number of dogs there. *Doc. 205* at 19. The Magistrate Judge also noted that Defendant Gojkovich had observed a thin dog surrounded by weeds without adequate shade and that both she and Defendant Ward heard concerning noises from an animal which led them to believe it was in distress. *Id* at 20.

Plaintiffs' objections first assert that by the time Defendants had gone to the property to investigate the tip, the information provided had become "stale." *211* at 4. They make much of the fact that Defendant Gojkovich conceded that information relied on in seeking a warrant should be "fresh," which means obtained within 36 hours. *Doc. 211* at 4; Ex. A1 at 1. Notwithstanding Gojkovich's statement, staleness is not measured by an arbitrarily set time. "[W]hether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *United States v. Burkhart*, 602 F.3d 1202, 1206 (10th Cir. 2010) (quoting *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004)). In this case, the Court has no trouble concluding that the information, which focused on a large number of dogs being held on a residential property, had not become stale at the time of the search. Moreover, the fact remains that a tip that there was a large number

of dogs on the property was corroborated by the personal observations of Defendant Gojkovich and other officials the very same day the first warrant was obtained. Defendant Gojkovich's warrant application materials indicated that she had heard several dogs barking at the rear of the property and several more at the front, and that she believed there were more than ten dogs on the property. *Doc. 124*, Ex. B-A1.

Plaintiff Shaun Duttle also avers that he never told Defendant Gojkovich how many dogs were on the property at any time because "[he] was not sure how many there were." *Doc. 211* at 3. Even assuming this to be true, it nonetheless supports a finding of probable cause. Although the Magistrate Judge's reliance on inconsistent statements between Sharon Duttle and Shaun Duttle about the number of dogs would fall by the wayside, new and arguably stronger evidence of a large number of dogs on the property would take its place.

It must be remembered that "probable cause is a matter of probabilities and common sense conclusions, not certainties." *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009) (internal quotation marks omitted). Plaintiffs do not dispute that Sharon Duttle told Defendant Gojkovich there were seven dogs on the property. *See generally doc. 211*. Common sense dictates that, were there truly only seven dogs on the property, Shaun Duttle, a college student and resident of the property, would have known as much. Given that he now claims he never said how many dogs were on the property because he truly did not know, a common sense conclusion would be that the

11

actual number of dogs on the property was atypically high and, at the very least, more than seven. Thus, even assuming Shaun Duttle never said he believed that there were ten dogs on the property, this assertion does nothing to undermine the Magistrate Judge's determination that probable cause existed to believe that there were more animals on the property than permitted to be there.

For the foregoing reasons, I agree with the Magistrate Judge's conclusion that the warrants to search the Duttle residence were supported by probable cause.

*5. Plaintiffs' assertion that the warrant was unsigned is unavailing*

The Magistrate Judge recommended finding the warrants to be valid and, relying on facts provided by Defendants that Plaintiffs did not contest, understood that all of the warrants had been signed in person by state magistrate judge Judge Oscar Fritz. *Doc. 205* at 10, 12. Plaintiff Shaun Duttle's objections state that on September 15, 2008, "[he] saw the warrant and it had no signatures on it." *Doc. 211* at 2. Four sentences later, he completely contradicts himself, saying, "I didn't see a warrant until the sixteenth of September 2008. . . ." *Id.* Even assuming the warrant had not been signed, and, as both Sharon and Shaun Duttle claim, Defendant Gojkovich said "it was valid because the judge had just gave [sic] consent telephonically," *id.*, Plaintiffs' allegations of a Fourth Amendment violation still fall flat because telephonically approved search warrants have long been recognized as valid. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1562 (2013) ("The Federal Rules of Criminal Procedure were amended in 1977 to permit

federal magistrate judges to issue a warrant based on sworn testimony communicated by telephone."). Outside of their attacks on the probable cause determination, Plaintiffs offer no argument that the proper procedures for obtaining such warrants were not complied with. I therefore OVERULE this objection.

### B. Due Process Claims

The Magistrate Judge recommended finding that Plaintiffs Nicholas and Shaun Duttle's due process rights had not been violated because (1) a valid search warrant justified the initial seizure of property, (2) they had not sought the return of their property, (3) they had failed to demonstrate that they were entitled to such property in light of Plaintiff Sharon Duttle's criminal case, which is pending on appeal, and (4) they had failed to demonstrate that any of the individual Defendants were responsible for their ongoing deprivation. *Doc. 205* at 21-23.

In the objections, Plaintiff Nicholas Duttle appears to suggest that he owned seven of the dogs seized pursuant to the search. *Doc. 211* at 5. He states, "Some if not all of these dogs were not given consent or signed for release but were still taken." *Id.* He concedes, however, "[he] left the animals under Sharon Duttle and Shaun Duttle's full care as of November 2001." *Id.* He also notes that, "[u]pon illegal seizure [Defendant] Gojkovich spoke with [him] via the phone." *Id.*

Plaintiff Shaun Duttle states that three computers were taken, which contained "all of my business records as well as all of my written ledgers and other written

13

business records. They also took multiple harnesses, collars, leashes, and clothes." *Doc. 211* at 3. He notes that "[t]hese items were never used during [his] mother's criminal proceedings and despite multiple pleas to have them returned." *Id.* His property, however, has since been returned, but he states that the delay "had a devastating impact on [his] business." *Id.*

As outlined in the Magistrate Judge's second PFRD, the initial seizure of Plaintiffs' property was appropriate in light of the search warrants issued in this case. *Doc. 205* at 22. The Magistrate Judge found that the second search warrant, which encompassed the items seized from Plaintiff Shaun Duttle, was supported by the evidence of dog fighting that had been found pursuant to the execution of the first search warrant. I agree in this assessment and find that the initial search of Plaintiffs' property was valid.

As to the continued dispossession of the property, although the objections note or imply that Plaintiffs did seek the return of their property, they still fail to illustrate that any of the Defendants possessed or were responsible for the possession of their property. Thus, even assuming a due process violation, I concur in the Magistrate Judge's finding that Plaintiffs have failed to demonstrate which of the Defendants, if any, were responsible for the alleged violations. *Doc. 205* at 23; *see Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

Furthermore, even assuming a constitutional violation occurred here and further assuming that Defendants were somehow responsible for that violation, Plaintiffs' due process claims nevertheless fail under the second prong of qualified immunity.

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity also shields officers who have "reasonable, but mistaken beliefs" and operates to protect officers from the sometimes "hazy border[s]" of the law. *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The Tenth Circuit has explained that to overcome qualified immunity, "[Plaintiffs] must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990).

Though not addressed in the Magistrate Judge's PFRD, I find that Defendants are also entitled to summary judgment because Plaintiffs have failed to carry their burden of demonstrating that the Defendants violated a clearly established constitutional right. Plaintiffs have directed the Court to a state statute establishing hearing procedures for seized animals, but have pointed the Court to no authority establishing that a failure to comply with those procedures violates due process, let alone that noncompliance is a

15

clearly established due process violation to which the Defendants should have been alerted. Therefore, I find that Plaintiffs have failed to establish a violation of a clearly established right sufficient to overcome Defendants' assertions of qualified immunity.

For the foregoing reasons, I adopt the Magistrate Judge's second PFRD with respect to Plaintiffs Shaun and Nicholas Duttle's due process claims and independently find that they fail as a matter of law. Defendants' Motions for Summary Judgment are therefore GRANTED.

### C. Conspiracy

As to Plaintiffs Nicholas and Shaun Duttle's § 1985(3) conspiracy claims, I adopt the Magistrate Judge's PFRD with respect to these claims for the same reasons outlined above as to Plaintiff Sharon Duttle. *See supra* § I. Accordingly, Defendants' Motions for Summary Judgment as to the conspiracy claims is therefore GRANTED.

### D. Failure to Train

Having found no underlying constitutional violation, which is required to support a failure to train claim, I concur with the Magistrate Judge's recommendation to dismiss this claim as to Plaintiffs Nicholas and Shaun Duttle. *Doc. 205* at 24 (citing *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

### IV. PLAINTIFFS' STATE LAW CLAIMS

Upon recommending granting Defendants' Joint Motion to Dismiss and the Defendants' separate Motions for Summary Judgment, the Magistrate Judge further

recommended refusing to exercise supplement jurisdiction. *Docs. 176, 205*. Because I agree that no reason exists to depart from the ordinary rule of dismissing state claims once all claims over which this Court has general jurisdiction are dismissed, Plaintiffs Sharon, Nicholas, and Shaun Duttle's state law claims are DISMISSED without prejudice.

**V.    CONCLUSION**

For the foregoing reasons, I conclude that Plaintiffs' objections to the PFRD have no merit and that their state law claims should be dismissed without prejudice.

Wherefore, IT IS HEREBY ORDERED that both of the Magistrate Judge's Proposed Findings and Recommended Disposition (*docs. 176, 205*) are ADOPTED. The Court GRANTS Defendants' Joint Motion to Dismiss (*doc. 152*), and Defendants' separate Motions for Summary Judgment (*docs. 193, 194*)

IT IS FURTHER ORDERED that, having found in favor of Defendants on their Motions for Summary Judgment, Plaintiffs' untimely Cross Motion for Summary Judgment (*doc. 200*) is DENIED.

Finally, IT IS FURTHER ORDERED that Plaintiffs' Motion to Extend Time (*doc. 211*) is DENIED.

_____
CHIEF UNITED STATES DISTRICT JUDGE